My name is Javier Rosas. I'm the attorney for the petitioner. Mr. Rosas. This case involves a person, the petitioner is from Peru. He was in the military. Frankly, he fought terrorism in the military of Peru in the backyard of the terrorists of Ayacucho. How do we overcome Officer Saraceno's testimony? I mean, isn't that the nub of what we have to focus upon, whether we should discount that and disagree with the IJ's credibility determination in that respect? Well, the testimony had occurred 10 years prior to the hearing. A lot of things could happen in 10 years. The judge himself said that the petitioner did testify credibly in the sense that the background details were the same, the peripheral details were the same, and essentially only disagreed on one incident. And the government of Peru also absolved him of any wrongdoing, any human rights violations in any alleged incidents. But that's not really Judge Block's question. The problem is that we have an adverse credibility finding based on a material inconsistency that goes to the heart of his claim for asylum. And how can you convince us that the evidence does not support the immigration judge's adverse fact finding? Well, the judge himself said that that was the only factor that was different from his original asylum application and his asylum conversation with the officer and the testimony that he gave. But it's what the asylum claim is all about. I mean, you'd have a much stronger argument if it was on a tangential issue. But it really does go to the heart of whether or not this man is entitled to asylum or whether the attorney general properly denied relief because of the fact that he was found to be a persecutor. Well, from my understanding from the incident, that's one of those issues where if he was applying, I mean, since he was applying for asylum, it would add credence to his issue, to his argument that he was scared of these terrorists from persecuting him. And the fact that he would have lessened the degree of it would actually take away from his claim. And in that respect, it would make his claim less than if he had just said, oh, yes, this person was materially assisting in terrorism. And that's why I think that the terrorists are going to put credit. But counsel, you're overlooking the fact that his testimony changed from admissions to the asylum officer that he was directly involved in the torture and murder of at least one innocent civilian. But when he got to the merits hearing several years later, he denied that he ever said that and instead tried to minimize his involvement and back away from the admissions that he had made to the asylum officer. Well, you know, like I said, it wasn't several years. It was ten years. It was more than several years. But that goes to the weight, not to the admissibility of the impeaching evidence, does it not? Well, I mean, ten years prior to for an incident that happened ten years prior to that. But that's weight, not admissibility. It is clearly a prior inconsistent statement and is therefore admissible for impeachment purposes. That's correct. But in terms of materiality to his claim, I mean, the fact that he lessened that one incident doesn't necessarily involve that he was not credible at all or that this court shouldn't consider that half the judge erred. I mean, the judge himself said it was all or nothing based on the one incident. And like I said, the one incident wasn't – it wasn't one of those situations where he didn't – he stated that all this other stuff had happened, that he had fought the terrorists, that he was responsible for the killing of many of them. He testified to the rest of all that stuff. As opposed to the one incident where the person was perhaps materially assisting the terrorists in their activities, perhaps he lessened that maybe. I don't know why. Maybe it was ten years prior to. And like I stated, the perusing government involved him. What do we do if the fact finder credits the admission that he made to the asylum officer that they burned and buried the bodies in the jungle in order to prevent anyone from finding out what they had done? Well, they found out what they had done, but he stated since – Well, it didn't work, but that is also something he backed away from. Well, in his personal experience, he stated from being in the jungle that it was hard to burn things being in the middle of the jungle. Well, he did state that, too. That's an attempt at the merits hearing to disavow what he said to the asylum officer. Now we're back with the problem of a prior inconsistent statement that goes to the heart of his asylum claim. Well, like I stated, I'm not sure that one incident necessarily goes to the heart of his entire claim. Well, that's a second instance. Everything else. First you've got the torture of the civilian. Now we're talking about multiple murders, or extrajudicial killings, I guess is the technical term, and an attempt to hide the evidence. Well, Your Honor, he stated that he was in a war with the terrorists. It wasn't a situation where they would attack people who were not involved in a war with the Peruvian government. I mean, they were specifically called in because that same terrorist organization had overtaken a police station, and that's why they were called in. He never made any fault or any statement saying that he wasn't involved in the war against them, or that he didn't do things that would be out of the norm for people being in a war situation. He never took away from any of that. And as far as the rest of the stuff, he did testify, as the judge said, as to most of the testimony they had given at the prior hearing, at the day of the immigration court hearing, as to a lot of material details and as to peripheral details, including the times he served, the training that he received, any number of instances where he testified the same. And the only issue was that one instance. As to the nature of the Primavera Plan? Yes, he testified as to the nature of what had happened, and that he testified, too, that he got called in to the military tribunal to answer for his specific acts in the Primavera Plan. And was there an explanation on the record as to what the Primavera Plan is? From the testimony, it was sort of the government's response to the terrorists having overtaken the police station from where they were called. And that's what resulted in the extrajudicial killings? I believe that was the plan when it came up with the extrajudicial killings, so to speak. He never denied that he was involved in the government's response to the terrorists taking over the police station. And that was the Primavera Plan that they had gone into. Now, his issue the whole time has been that he was part of the government's response to the terrorism. And that's why he was in the region, and that's why his specific training, you know, the School of Americas. Is the situation any different from the situations, and I don't mean to be unfair to Mr. Reynoso Ortega, but it strikes me that the argument you are making is identical to the argument that former guards at the concentration camps during World War II argued at their deportation hearings in the United States when they were ultimately tracked down by the Office of Special Investigations. No, I believe... Doing it on orders of my government. Well, I believe the situation is much different. I mean, I know in the 9th Circuit case previously of the Chaco versus INS, the government said that someone involved in the military coup to try to take over the government wasn't entitled to asylum because there was a peaceful process that those people could have gone through to change the government. And the Sendero Luminoso, the Shining Path, did not want to take that path. And it was his responsibility to fight against the terrorism. It wasn't one of those situations where he actively started the war against the Sendero Luminoso. Does this go to the issue of persecution, or does it go to the issue of political opinion? Where does this fit in terms of the statute? It goes into why he did it, why he was there, why he was fighting these terrorists. So that goes to political opinion? Well, it goes to the fact that he didn't care what their political opinion was. He was there to respond to terrorism. I mean, in the statute for asylum... But in order for him to claim asylum, he has to show that because of political opinion he was persecuted. That's correct. Okay. So what does that go to? Which of the two? It goes to the fact that maybe they imputed political opinion onto him, that the Sendero Luminoso imputed political opinion onto him. As far as the statutory part, he has to do the persecution based on one of the five grounds. And if he did persecution, it wasn't based on any of the five grounds. No, no, wait a minute. It's not whether he was persecuting. In order to qualify, he has to show that he was persecuted. I mean, somebody was persecuting him. Yes. They were trying to change... I guess the argument was that they were imputing a political opinion onto him, that he somehow had a political opinion against communism. But his military status precludes him from establishing a past persecution, does it not? In the sense that... I mean, his status really precludes past persecution by the fact that he's in the military. Well, not necessarily. There have been other cases in the Ninth Circuit where, even in El Salvador, other countries who are fighting against communism have been granted asylum by this court, even though they're ex-military. He was a current military person at the time. At the time, but then later on he moved to Lima. If he goes back now, he would be a past military person, so the dynamics may shift. But in terms of past persecution now, his status was as a military person, and it seems to me that it's an irrelevancy whether or not you can establish past persecution by reason of the fact that he was in the military then. But like I said, there are Ninth Circuit cases that said even people who are former military... Former military. Former military, like he would be. He would be former military from their own country who were granted asylum based on past persecution. If he goes back, we'd have to depend upon showing that he has a fear of future persecution by reason of things that have happened, I guess, since then or might be happening now. That's correct. And the Sendero-Luminosos are still... You don't have any record here that supports that at all. Well, the Sendero-Luminosos are still designated terrorists on their State Department list. If they weren't designated as terrorists, maybe they would have been taken off the list. They're still on the list. So you think that anybody going back to Peru now who would have the status as a former military person would automatically be able to show fear of future persecution because Shining Light is on the terrorist list? Is that your argument? No. Well, he specifically, since he had specifically previously fought against the Sendero-Luminoso. I mean, I'm sure there's people in the Peruvian military who never fought against the Sendero-Luminoso. Well, you have to show that he's really at risk here if he returns now, based upon current circumstances, right? Yeah. The problem is, like I said, the immigration case happened in 2004, based on the 1994 conversation, based on when he was in the military in 1984. Thank you, counsel. Our questions have taken you way over time. Your time has expired. We'll hear from the government. Good morning, Your Honors. Let me jump right in. I guess what I'm curious about. I'm from Brooklyn, so we talk quickly. Oh, we didn't hear your name? I'm sorry. Would you please, for the record, state your name for the record. My name is Allison Drucker. I'm here representing the United States. Very well. Judge, you're right. Apologies. We don't waste time in Brooklyn with these things. I guess not. I'm just curious about how you reconcile the 1994 interview where apparently she wrote that he was a sympathizer, a suspected Shining Path sympathizer, was threatened with death compared to what happened a decade later when she says now she, Rinosa, told her that he actually killed the suspected sympathizer. I'm troubled by that. Maybe you can explain to me how I can deal with that inconsistency. Well, as I understand it, Petitioner testified to the immigration judge that he took no prisoners. That's at AR-87. And he had no knowledge while he was in the military of human rights violations. That's at AR-221. I know he said that, but I'm concerned about, I guess it's Saraceno's notes, you know, back in 1994 compared to 2004. She seems to be inconsistent there. Well, are you saying the notes within the notes? First she said he was threatened. First she referred, I think, you tell me if I'm wrong, that 1994 interview, she wrote that the notes state that the suspected Shining Path sympathizer was threatened with death and in 2004 she testified that Rinosa admitted to actually killing the suspected sympathizer. I'm just wondering, it seems that she's saying two different things here ten years later, and how do you reconcile that? Because if somebody's just threatened with death, it's not quite the same as actually killing the suspected sympathizer. Okay, that's true. But, Your Honor, I guess there's two things here. First of all, the discrepancies between what the Petitioner testified to in front of the immigration judge and what the asylum officer said he testified to during his interview covered a lot of things other than just the one civilian. They covered the question of torturing and killing other people, presumably people who were Shining Path survivors. You're saying that's an irrelevancy then, that particular discrepancy is an irrelevancy. Well, I'm saying it's one minor thing in a larger framework. It seems pretty major to me, but what else do you have? Well, as I was saying, okay, so he made these statements to the immigration judge, but then the asylum officer says that he spoke about torturing and killing people without judicial process, and then there's this question about the one civilian, whether the one civilian was killed or threatened with death. And, in fact, elsewhere in a declaration by the asylum officer at AR-403, he said that he was sorry about what happened to the civilian. So there is this definite contradiction about what exactly his situation was in terms of human rights. The testimony from the asylum officer, I mean, there were a number of things that related in the record, related to the asylum officer's accounts. There was a declaration, there was an intent to deny, there were actual notes. But perhaps most importantly, the officer testified live and was subject to cross-examination. She testified under oath before the immigration judge. So even if there are some questions that remain, adverse credibility, which is the only basis on which the board denied asylum and withholding, was adverse credibility. This Court reviews that under the substantial evidence test, which means unless the evidence compels a reversal of that denial, the board's denial on the basis of the adverse credibility should stand. Does the transcript of the merits hearing indicate whether the asylum officer was ever confronted with this potentially inconsistent contemporaneous note? I don't believe so, Your Honor. I have looked recently and closely at that, and I don't recall that. You don't recall seeing that question asked? No. Well, do you think that should have been explored further under the circumstances, that it was the obligation of the I.J. to explore that particular inconsistency? Well, perhaps it would be better if that had been resolved. But again, I think there's plenty of substantial evidence, more than enough in this case, to indicate that under the proper standard of review, the adverse credibility findings should stand. Well, assume we disagree with the government's view on the adverse credibility issue. What about persecution? Specifically, are we entitled to entertain the idea that Shining Path can be the persecutor? In other words, they stand in the shoes of the government? Because all our cases say the persecution has to be by the government or tolerated by the government. Oh, I believe you're talking about the Convention. Are you talking about the Convention Against Torture? No, no. I'm just trying to find out. Okay. An alternative basis for reviewing the case, if we disagree with you on adverse credibility, what about the merits of persecution? Right. Was that established or not? Well, as I understand the Board's decision here, the only basis on which the Board denied asylum and withholding was on the adverse credibility claim, that they did not reach an alternative, you know, saying that even if this person was credible, he hadn't made out enough of a case, he hadn't carried his burden of proof. All right. So what you're saying is if we disagree with you on adverse credibility, we have to send it back? Yes. Yes, Your Honor. That's my reading of the Board decision. I don't understand something, and, you know, it's just I confess maybe it's my lack of understanding the dynamics here. I read Cruz Navarro, and my sense is that if somebody is in the military, this is not a protected status. He was in the military throughout this entire period of time. Why do we even need to be concerned about, you know, past persecution if he doesn't qualify as protected? Well, that issue wasn't discussed at all in the Board's decision because, as I said, the only thing that the Board decided was the adverse credibility. Counsel, I'm having a hard time reconciling your answers to my colleagues' questions with what the Board actually said. I'm looking at ER 3, the third paragraph in the middle of the page in which the Board says, and I quote, Based on the foregoing, we cannot find that the integration judge's adverse credibility finding is clearly erroneous and further find that the respondent provided insufficient evidence to meet his burden of proving that he is a refugee. Should I not read that as besides the fact that we don't think he was credible, he also didn't meet his burden of proof? Or do you read that as because of the adverse credibility finding he didn't meet his burden of proof? Well, you raise a good point, Judge Tolman. You have a good answer. I guess you could take it that way. Well, a little later on on the same page, there is a reference to the failure to establish that any fear from the government or entities would act with the acquiescence of the government. In other words, that shining path threats are not enough. In which case, if we disagreed on adverse credibility, we could still affirm. Under that view, yes, Your Honor. All right. Anything further? The only other thing I would say is I think the court has a very good grasp of this case, and in particular, the persecutor bar aspect of it. I think you understand well that this case was not decided for lack of statutory eligibility on the persecutor bar, and that we believe that this case can be decided without addressing that. But if you felt that that was a problem, then that would be a basis for remanding the case. Very well. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision. Thank you. And we'll hear argument next in Villar, Guzman v. Holder.
judges: Block, O'scannlain, Tallman